**LOPEZ, BARK & SCHULZ LLP**
Harry J. Schulz, III, Esq. (SBN 205625)
  *hschulz@lbslawyers.com*
Michael E. Lopez, Esq. (SBN 214937)
  *mlopez@lbslawyers.com*
Brian Z. Bark, Esq. (SBN 217514)
  *bbark@lbslawyers.com*
James P. Miller, Esq. (SBN 307189)
  *jmiller@lbslawyers.com*
300 Spectrum Center Drive, Suite 1550
Irvine, CA 92618
Telephone: (949) 383-9585
Facsimile: (714) 242-1544

Counsel for Plaintiffs
Pacific Premier Bancorp, Inc. and
Pacific Premier Bank

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC PREMIER BANCORP, INC., a Delaware corporation, and PACIFIC PREMIER BANK, a California corporation,<br><br>       Plaintiffs,<br><br>   v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York corporation, and COLUMBIA CASUALTY COMPANY, an Illinois corporation,<br><br>       Defendants. | Case No. 8:22-cv-00842 CJC (DFMx)<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF, AND BAD FAITH**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Pacific Premier Bancorp, Inc. and Pacific Premier Bank (collectively, "PPB") complain and allege as follows:

**JURISDICTION AND VENUE**

1. This action is an insurance coverage litigation arising out of Defendant Zurich American Insurance Company's ("Zurich") and Defendant Columbia Casualty Company's ("Columbia") unreasonable denials of any duty to advance defense costs or otherwise pay loss on behalf of PPB against the claims asserted in the actions entitled: (a) *Clyde A. Hamstreet & Associates, LLC, as receiver, v. American Equities, Inc., et al.*, currently pending in the Superior Court of Washington, Clark County, under Case No. 20-2-00507-06 (the "*Hamstreet* Litigation"); (b) *Diane L. Anderson Revocable Trust, et al. v. Davis Wright Tremaine LLP, et al.*, currently pending in the United States District Court, District of Oregon, under Case No. 3:20-cv-01194-AC (the "*Anderson* Litigation"); and (c) *Beattie, et al. v. Davis Wright Tremaine LLP, et al.*, currently pending in the Circuit Court of the State of Oregon, County of Multnomah, under Case No. 20CV09419 (the "*Beattie* Litigation"). The *Hamstreet* Litigation, the *Anderson* Litigation, and the *Beattie* Litigation shall be collectively referred to herein as the "Underlying Litigations."

2. This Complaint seeks damages resulting from Defendant Zurich's and Defendant Columbia's wrongful refusals and denials of benefits due under policies of insurance insuring PPB.

3. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between and among each of PPB, Defendant Zurich, and Defendant Columbia. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Venue is proper in this Court under 28 U.S.C. § 1391 in that each of Defendant Zurich and Defendant Columbia is subject to personal jurisdiction in this district at the time the action is commenced, and because a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this district. Specifically, each of Defendant Zurich and

Defendant Columbia is licensed to do business in this district and, indeed, each entered into the insurance policies at issue in this district.

## PARTIES

5. Pacific Premier Bancorp, Inc. is, and at all times herein mentioned was, a corporation organized and existing under the laws of Delaware, with its principal place of business in Irvine, California.

6. Pacific Premier Bank is, and at all times herein mentioned was, a corporation organized and existing under the laws of California, with its principal place of business in Irvine, California. Pacific Premier Bank is a wholly owned subsidiary of Pacific Premier Bancorp, Inc.

7. PPB is informed and believes, and based thereupon alleges, that Defendant Zurich is, and at all times herein mentioned was, a corporation organized and existing under the laws of New York, with its principal place of business in Illinois, and was authorized to do business in California.

8. PPB is informed and believes, and based thereupon alleges, that Defendant Columbia is, and at all times herein mentioned was, a corporation organized and existing under the laws of Illinois, with its principal place of business in Illinois, and was authorized to do business in California.

## FACTUAL BACKGROUND

*The Hamstreet* **Litigation.**

9. On February 19, 2020, Clyde A. Hamstreet & Associates, LLC (the "Receiver") filed a complaint for damages on behalf of the Receiver Entities (or "Pools") against American Equities, Inc. ("AEI") and others. On August 28, 2020, the Receiver filed an amended complaint, which named Pacific Premier Bank as a defendant and asserted claims against Pacific Premier Bank and others for, *inter alia*, Breach of Fiduciary Duties, Aiding and Abetting Breach of Fiduciary Duties, and Negligence (including in connection with alleged conduct by Pacific Premier Bank's predecessors, Regents Bank and Grandpoint Bank). On January 12, 2022, the Receiver filed a second amended complaint (the "Second Amended

Hamstreet Complaint"), which asserted these same claims against Pacific Premier Bank, and which remains the operative complaint. A copy of the Second Amended Hamstreet Complaint is attached hereto as **Exhibit 1**.

10. Among other things, the Receiver alleges that Pacific Premier Bank and others have engaged in certain wrongful acts in the rendering (or failure to render) professional services to the Pools, who were customers of Pacific Premier Bank with depository accounts, including breaching (and aiding and abetting breaches of) fiduciary duties owed to the Pools, and committing negligence in connection with the deposit (client) relationship which Pacific Premier Bank had with the Pools. Some of the alleged wrongful acts appear to relate to certain loans/extensions of credit (and the related servicing thereof) by Pacific Premier Bank to the Pools and/or Pool Managers, while other alleged wrongful acts appear to relate to non-lending professional services which Pacific Premier Bank supposedly performed (or was purportedly obligated to perform) for the Pools and/or the Pool Managers. All such wrongful acts are alleged to have damaged the Pools and their investors, who had invested monies in such Pools.

11. Over the course of motion and discovery practice in the *Hamstreet* Litigation, the Receiver has further clarified his allegations against Pacific Premier Bank, including by asserting, *inter alia*, that Pacific Premier Bank: (a) "was aware of the restrictions on the use of cash imposed on the Pool Managers as manager of the Pools" and "knew that the Pool Managers were violating those restrictions by commingling the funds of different Pools, commingling Pool funds with other Pool Manager cash, and using Pool funds for unauthorized purposes;" (b) "repeatedly used atypical banking procedures to service the accounts" in a manner which "allowed the Pool Managers to operate and conceal the Ponzi scheme;" (c) failed to "use reasonable care in supervising its employees to keep them from injuring" the Pools, including, *inter alia*, by failing to detect (via "compliance or other supervisory structures") "improper transfers" of Pool funds contained in deposit accounts at Pacific Premier Bank, which "improper transfers" constituted breaches of the AEI Defendants' fiduciary duties to the Pools; (d) "aided and abetted" the AEI Defendants'

breaches of fiduciary duties, including by failing to disclose that "from at least 2007 through 2019 the Pool Managers routinely made unauthorized, undocumented, undisclosed, and irregular transactions involving the Pools' assets." Such transactions allegedly included "significant intermingling and comingling of funds among the Pools, millions of dollars in loans among the Pools, and millions of dollars in loans from the Pools to more than 16 parties related to Miles or Wile, or their family members, or entities that shared AEI's business address;" (e) was aware of, and failed to disclose, the fact that "[b]eginning in 2007, the AEI Defendants caused the Pools to make loans to a number of related parties…each of which violated the terms of the Offering Materials and by definition did not meet the Pool's lending requirements;" and (f) owed the Pools "a duty to notify them of the AEI Defendants' breaches of fiduciary duty" and failed to do so.[1] Notably, the Receiver has denied that the Pools' claims against Pacific Premier Bank are ones "which are asserted exclusively in connection with credit advances made by Pacific Premier Bank to managers of the Pools."

12. As a result of such alleged conduct by Pacific Premier Bank and others, the Receiver claims that the Pools have been damaged.

*The Anderson* **Litigation.**

13. On February 25, 2020, Diane Anderson, as trustee of the Diane L. Anderson Revocable Trust, filed a putative class action complaint for damages against the law firm of Davis Wright Tremaine, LLP ("Davis Wright"). On July 20, 2020, Ms. Anderson filed an amended complaint which named Pacific Premier Bank as a defendant and which asserted claims against Pacific Premier Bank and others for, *inter alia*, violations of ORS § 59.115(1)(b) and § 59.115(3). On March 25, 2022, Ms. Anderson filed a second amended complaint (the "Second Amended Anderson Complaint"), which asserted these same claims against Pacific Premier Bank, and which remains the operative complaint. A copy of the Second Amended Anderson Complaint is attached hereto as **Exhibit 2**.

---

[1] The "Pool Managers" (also referred to as the "AEI Defendants") are collectively defined to mean AEI, American Eagle Mortgage Management, LLC ("AEMM"), Ross Miles, and Maureen Wile.

14. As a result of such alleged conduct by Pacific Premier Bank and others, the Anderson Plaintiffs claim that they are entitled to recover damages, interest thereon, and their attorneys' fees.

*The Beattie* **Litigation**.

15. On February 25, 2020, Sherry Beattie and others filed a complaint for damages against Davis Wright. On September 15, 2020, Ms. Beattie filed an amended complaint which named Pacific Premier Bank as a defendant and which asserted claims against Pacific Premier Bank and others for, *inter alia*, violations of ORS § 59.115(1)(b) and § 59.115(3), as well as violations of 71 Ok St §1-509(G) (the "Amended Beattie Complaint"). On May 19, 2022, Ms. Beattie filed a second amended complaint which further refined those claims against Pacific Premier Bank and others (the "Second Amended Beattie Complaint"). A copy of the Second Amended Beattie Complaint is attached hereto as **Exhibit 3**.

16. As a result of such alleged conduct by Pacific Premier Bank and others, the Beattie Plaintiffs claim that they are entitled to recover damages, interest thereon, and their attorneys' fees.

**The 2017-2018 Zurich Policy.**

17. In exchange for valuable consideration, Defendant Zurich issued policies of insurance to Grandpoint Capital, Inc. ("Grandpoint"), including without limitation, business liability insurance under written insurance policy numbered DOP 0115355-02 (effective April 30, 2017 to July 30, 2018) (the "2017-2018 Zurich Policy"). Pacific Premier Bancorp, Inc. is the ultimate corporate successor of Grandpoint and is an Insured under the 2017-2018 Zurich Policy. As a subsidiary of Pacific Premier Bancorp, Inc., Pacific Premier Bank is also an Insured under the 2017-2018 Zurich Policy. A copy of the 2017-2018 Zurich Policy is attached hereto as **Exhibit 4**.

18. At all times herein mentioned, all premiums on the 2017-2018 Zurich Policy were paid by or on behalf of PPB as such premiums became due and payable, and the Insureds under such 2017-2018 Zurich Policy have duly complied with all material conditions

in such 2017-2018 Zurich Policy, except for those conditions which have been waived or excused by Defendant Zurich.

19. The 2017-2018 Zurich Policy broadly insures each of PPB against, among other things, "all Loss for which the Company becomes legally obligated to pay on account of a Claim for a Wrongful Act, including Wrongful Acts in connection with the rendering of or failure to render Professional Services." **Exhibit 4**, Form U-DOP-1208-A-CW, p. 1 (01/10) (emphasis added). The 2017-2018 Zurich Policy also promises that Defendant Zurich will timely advance Defense Costs incurred by the Insureds in respect of such Claims. **Exhibit 4**, U-DOP-MAN-A CW, p. 2 (10/14).

20. The 2017-2018 Zurich Policy defines "Wrongful Act" to include "any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the Company." **Exhibit 4**, Form U-DOP-1208-A-CW, p. 2 (01/10).

21. The 2017-2018 Zurich Policy defines "Professional Services" to mean "those services performed or required to be performed by an Insured for, on behalf of or in connection with a customer of the Company. Professional Services shall include Broker Services, Insurance Agent Services and IRA/Keogh Services if coverage for any of these services is purchased as indicated in the Coverage Schedule as set forth in Item 5 of the Declarations." **Exhibit 4**, Form U-DOP-1201-A CW (01/10), at p. 5.

22. The 2017-2018 Zurich Policy also includes an "Allocation" provision in which Zurich promises, in pertinent part, that:

> If in any Claim under the Liability Coverage Parts the Insureds incur both Loss covered by this policy and loss not covered by this policy either because the Claim against the Insureds includes both covered and uncovered matters or because the Claim is made against both Insureds who are afforded coverage for such Claim and others, including Insureds, who are not afforded coverage for such Claim, the Insureds and the Insurer shall use their best efforts to allocate such amount between covered Loss and uncovered loss based upon the relative legal and financial exposures of the parties to covered and uncovered matters; provided however that one hundred percent (100%) of any such Defense Costs shall be allocated to covered Loss if and to the extent such Defense Costs are incurred by covered Insureds and are in part

covered and in part not covered by this policy solely because the Claim against the Insureds includes both covered and uncovered matters.

**Exhibit 4**, Form U-DOP-1201-A CW (01/10), at p. 9.

23. The 2017-2018 Zurich Policy was endorsed to include an Extended Reporting Period for the period from July 1, 2018 to July 1, 2024, with respect to Wrongful Acts committed or allegedly committed before July 1, 2018. **Exhibit 4**, Form U-DOP-2107-A CW (01/10), Endorsement 16.

**The 2020-2021 Columbia Policy.**

24. In exchange for valuable consideration, Defendant Columbia issued policies of insurance to Pacific Premier Bancorp, Inc., including without limitation, bankers' professional liability insurance under written insurance policy numbered 652124810 (effective June 30, 2020 to June 30, 2021) (the "2020-2021 Columbia Policy"). Pacific Premier Bancorp, Inc. is an Insured under the 2020-2021 Columbia Policy. As a subsidiary of Pacific Premier Bancorp, Inc., Pacific Premier Bank is also an Insured under the 2020-2021 Columbia Policy. A copy of the 2020-2021 Columbia Policy is attached hereto as **Exhibit 5**.

25. At all times herein mentioned, all premiums on the 2020-2021 Columbia Policy were paid by or on behalf of PPB as such premiums became due and payable, and the Insureds under such 2020-2021 Columbia Policy have duly complied with all material conditions in such 2020-2021 Columbia Policy, except for those conditions which have been waived or excused by Defendant Columbia.

26. The 2020-2021 Columbia Policy broadly insures each of PPB against, among other things, "that Loss resulting from any Claim if such Claim is first made against the Insureds during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act in the rendering or failing to render Professional Services." **Exhibit 5**, Form GSL2424 c (Ed 9-07), p. 1. The 2020-2021 Columbia Policy also promises that Defendant Columbia will timely advance Defense Costs incurred by the Insureds in respect of such Claims. **Exhibit 5**, Form GSL2424 c (Ed 9-07), p. 7.

27. The 2020-2021 Columbia Policy defines "Wrongful Act" to include "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the Insureds." **Exhibit 5**, Form GSL2424 c (Ed 9-07), p. 3.

28. The 2020-2021 Columbia Policy defines "Professional Services" to mean "those services performed by or on behalf of the Insured Entity for a third party client of Insured Entity pursuant to a written contract with a third party client for consideration inuring to the benefit of such Insured." **Exhibit 5**, Form GSL2424 c (Ed 9-07), p. 2. "Professional Services" is also defined to include a "Lending Act." **Exhibit 5**, Form CNA66660XX (4-17), Endorsement 6, p. 1.

29. "Lending Act" is defined by the 2020-2021 Columbia Policy to mean "a Wrongful Act by or on behalf of an Insured Entity relating to an extension of credit, a refusal to extend credit, or an agreement to extend credit, to a Borrower. Lending Act also means Loan Servicing." **Exhibit 5**, Form CNA66660XX (4-17), Endorsement 6, p. 1. In turn, "Loan Servicing" is defined to mean "administrative services in connection with loan, lease or extension of credit." **Exhibit 5**, Form GSL2424 c (Ed 9-07), p. 2.

30. The 2020-2021 Columbia Policy also includes an "Allocation" provision in which Columbia promises, in pertinent part, that:

> If a Claim made against the Insureds includes both covered and uncovered matters or if a Claim is made against Insureds who are extended coverage therefore and others who are not extended coverage therefore, the Insureds agree that there must be an allocation between insured and uninsured loss. The Insureds and the Insurer shall exert their best efforts to agree upon a fair and proper allocation between insured and uninsured loss.

**Exhibit 5**, Form GSL2424 c (Ed 9-07), p. 7.

31. The 2020-2021 Columbia Policy further provides that "if the Insureds and the Insurer cannot, after exerting their best efforts, agree on an allocation of insured and uninsured Defense Costs, the Insurer then shall advance the percentage of Defense Costs which the Insurer states to be fair and proper until a different allocation is agreed upon or

determined pursuant to the provisions of this Policy and applicable law." **Exhibit 5**, Form GSL2424 c (Ed 9-07), p. 7.

**Defendant Zurich's Wrongful Denial Of Coverage.**

32. Defendant Zurich has admitted that it received notices of each of the Underlying Litigations. Defendant Zurich has not contended that such notices were in any way untimely or otherwise defective.

33. From and after the date that notices of the *Hamstreet* Litigation, the *Anderson* Litigation, and the *Beattie* Litigation were sent to Defendant Zurich, PPB has incurred Defense Costs necessary to avoid or at least minimize its potential liability in each of the Underlying Litigations.

34. Yet, despite having promised to advance Defense Costs on behalf of and pay other Loss incurred by PPB on account of Claims for Wrongful Acts (such as those alleged in the Underlying Litigations), Defendant Zurich has wrongfully delayed, denied and refused, and continues to wrongfully delay, deny and refuse, to advance Defense Costs on behalf of or pay other Loss incurred by PPB on account of such Claims.

35. More specifically, on October 29, 2020, Defendant Zurich denied all coverage for the *Hamstreet* Litigation and the *Anderson* Litigation (including any duty to advance Defense Costs incurred by PPB against such Claims). On February 3, 2022, Defendant Zurich likewise denied all coverage for the *Beattie* Litigation. Defendant Zurich based these denials upon its contentions that each of the Underlying Litigations allege Wrongful Acts in connection with Lending Acts, and that coverage for Lending Acts is excluded under the 2017-2018 Zurich Policy.

36. Yet, Defendant Zurich's coverage denial is contrary to the broad coverage provided by the 2017-2018 Zurich Policy, and it ignores the fact that the operative pleadings in each of the Underlying Litigations – together with extrinsic facts developed in connection with those litigations – makes clear that each of the Underlying Litigations include allegations of Wrongful Acts which are separate from and independent of (and thus do not arise in

connection with) any of the purported Lending Acts to which Defendant Zurich cites in its denials of coverage.

37. At best, Defendant Zurich may have an argument that the "Allocation" provision of the 2017-2018 Zurich Policy was implicated by the asserted inclusion of additional Wrongful Acts that were purportedly committed in connection with one or more Lending Acts. However, Defendant Zurich elected to improperly disregard its "Allocation" provision and instead denied coverage for the entirety of the Underlying Litigations, including for those alleged Wrongful Acts which do not arise in connection with any Lending Acts committed by PPB or its predecessors.

38. As a result of Defendant Zurich's unreasonable denial of its duties to advance Defense Costs or otherwise pay Loss incurred by PPB in connection with the Underlying Litigations, PPB has been forced to incur or pay over $1,651,644 of Defense Costs out of its own pocket without reimbursement from Defendant Zurich.

**Defendant Columbia's Wrongful Denial Of Coverage.**

39. Defendant Columbia has admitted that it received notices of each of the Underlying Litigations. Defendant Columbia has not contended that such notices were in any way untimely or otherwise defective.

40. From and after the date that notices of the *Hamstreet* Litigation, the *Anderson* Litigation, and the *Beattie* Litigation were sent to Defendant Columbia, PPB has incurred Defense Costs necessary to avoid or at least minimize its potential liability in each of the Underlying Litigations.

41. Yet, despite having promised to advance Defense Costs on behalf of and pay other Loss incurred by PPB on account of Claims for Wrongful Acts (such as those alleged in the Underlying Litigations), Defendant Columbia has wrongfully delayed, denied and refused, and continues to wrongfully delay, deny and refuse, to advance Defense Costs on behalf of or pay other Loss incurred by PPB on account of such Claims.

42. More specifically, on January 26, 2022, Defendant Columbia – despite acknowledging that each of the Underlying Litigations is a potentially covered Claim –

incorrectly asserted that it was only obligated to reimburse up to 9% of the Loss (including Defense Costs) incurred by PPB in respect of such Claims. Defendant Columbia also argued that any coverage provided by the 2020-2021 Columbia Policy was excess of any insurance provided by the 2017-2018 Zurich Policy.

43. On June 1, 2022, Defendant Columbia reiterated its erroneous coverage positions, effectively denying coverage to PPB for at least 91% of the Loss it has incurred or will incur in respect of the Underlying Litigations. Moreover, despite its contention that it only owes 9% of the Loss (including Defense Costs) incurred in the Underlying Litigations, Defendant Columbia has not yet paid a single penny of such Loss to (or on behalf of) PPB.

44. As a result of Defendant Columbia's unreasonable denial of its duties to advance Defense Costs or otherwise pay all covered Loss incurred by PPB in connection with the Underlying Litigations, PPB has been forced to incur or pay over $1,651,644 of Defense Costs out of its own pocket without reimbursement from Defendant Columbia.

## **FIRST CLAIM FOR RELIEF**

(Breach of Contract – Failure To Advance Defense Costs)

45. PPB realleges and incorporates by this reference Paragraphs 1-44 of this Complaint as if fully set forth herein.

46. Each of Defendant Zurich and Defendant Columbia has breached its respective contractual obligations under the 2017-2018 Zurich Policy and the 2020-2021 Columbia Policy issued to PPB, including Defendant Zurich's and Defendant Columbia's separate duties to advance Defense Costs on behalf of PPB against each of the Underlying Litigations, by, among other things, denying coverage for, delaying, refusing and failing to pay any of PPB's Defense Costs incurred with respect to any of the Underlying Litigations.

47. As a direct and proximate result of each of Defendant Zurich's and Defendant Columbia's breaches of contract as alleged herein, PPB has been required to incur, agree to pay or pay over $1,651,644 of Defense Costs to respond to and defend against each of the Underlying Litigations without reimbursement from either Defendant Zurich or Defendant Columbia. PPB has thereby been damaged in an amount to be determined at trial, which

damages include, without limitation, all of PPB's unreimbursed defense fees and costs which have been incurred in connection with responding to and defending against each of the Underlying Litigations, together with interest thereon.

## SECOND CLAIM FOR RELIEF

### (Bad Faith)

48. PPB realleges and incorporates by this reference Paragraphs 1-44 of this Complaint as if fully set forth herein.

49. Each of Defendant Zurich and Defendant Columbia has breached its respective implied covenants of good faith and fair dealing by, among other things: (1) wrongfully and unreasonably denying its duty to advance Defense Costs on behalf of PPB against each of the Underlying Litigations; (2) wrongfully and unreasonably denying its duty to pay Loss on behalf of PPB against each of the Underlying Litigations; (3) compelling PPB to institute litigation to recover amounts due under the 2017-2018 Zurich Policy and the 2020-2021 Columbia Policy, respectively; (4) failing to adopt and implement reasonable standards for the investigation and handling of PPB's claims; (5) failing to provide a prompt or reasonable explanation as to why such Defendant was not advancing Defense Costs on behalf of PPB against each of the Underlying Litigations; (6) taking unreasonable positions concerning the coverage provided under the 2017-2018 Zurich Policy and the 2020-2021 Columbia Policy, respectively; and (7) grossly misrepresenting the provisions of and the coverage respectively provided by the 2017-2018 Zurich Policy and the 2020-2021 Columbia Policy.

50. As a direct and proximate result of each of Defendant Zurich's and Defendant Columbia's breaches of its duties of good faith and fair dealing as set forth above, PPB has suffered damages, plus interest, together with all of its attorneys' fees and costs incurred in prosecuting this action to seek insurance coverage benefits wrongfully withheld by Defendant Zurich and Defendant Columbia.

51. The unjustified and unreasonable conduct of each of Defendant Zurich and Defendant Columbia was calculated to deprive PPB of the benefits of its bargain, with resulting harm to PPB. Defendant Zurich's and Defendant Columbia's respective breaches of

their duties of good faith and fair dealing were done with a conscious disregard of PPB's rights and with the intent to vex, injure or annoy PPB such as to constitute oppression or malice. PPB is therefore entitled to exemplary damages to punish and make an example of each of Defendant Zurich and Defendant Columbia.

### THIRD CLAIM FOR RELIEF

**(Declaratory Relief)**

52. PPB realleges and incorporates by this reference Paragraphs 1-44 of this Complaint as if fully set forth herein.

53. Actual controversies have arisen and now exist between PPB and each of Defendant Zurich and Defendant Columbia regarding whether, and to what extent, 2017-2018 Zurich Policy and the 2020-2021 Columbia Policy, respectively, provides coverage to PPB against those allegations in each of the Underlying Litigations which assert Claims for alleged Wrongful Acts committed by PPB (and/or its predecessors) in connection with the rendering of or failure to render Professional Services, such that each of Defendant Zurich and Defendant Columbia is required to advance Defense Costs on behalf of and pay Loss incurred by PPB in connection with such Claims.

54. Judicial declarations are necessary and appropriate at this time in order to ascertain PPB's rights to the advancement of Defense Costs and the payment of Loss under each of the 2017-2018 Zurich Policy and the 2020-2021 Columbia Policy against the Claims asserted in each of the Underlying Litigations. Indeed, given that each of Defendant Zurich's and Defendant Columbia's duties to advance Defense Costs are critical to PPB's defense against the Underlying Litigations, such judicial declarations are urgently needed to enable PPB to fully present its defenses and to prevent substantial prejudice to PPB's interests.

55. PPB thus seeks a judicial declaration that each of the 2017-2018 Zurich Policy and the 2020-2021 Columbia Policy provides coverage to PPB against those allegations in each of the Underlying Litigations which assert Claims for alleged Wrongful Acts committed by PPB (and/or its predecessors) in connection with the rendering of or failure to render Professional Services, such that Defendant Zurich and Defendant Columbia are each

respectively required to advance Defense Costs on behalf of and pay Loss incurred by PPB in connection with such Claims.

**PRAYER FOR RELIEF**

WHEREFORE, PPB prays for judgment against Defendant Zurich, as follows:

1. For a judicial declaration that the 2017-2018 Zurich Policy provides coverage to PPB against those allegations in each of the Underlying Litigations which assert Claims for alleged Wrongful Acts committed by PPB (and/or its predecessors) in connection with the rendering of or failure to render Professional Services, such that Defendant Zurich is required to advance Defense Costs on behalf of and pay Loss incurred by PPB in connection with such Claims;

2. For a judicial declaration that the 2020-2021 Columbia Policy provides coverage to PPB against those allegations in each of the Underlying Litigations which assert Claims for alleged Wrongful Acts committed by PPB (and/or its predecessors) in connection with the rendering of or failure to render Professional Services, such that Defendant Columbia is required to advance Defense Costs on behalf of and pay Loss incurred by PPB in connection with such Claims;

3. For compensatory damages, including all of PPB's unreimbursed Defense Costs which have been incurred in connection with responding to and defending against each of the Underlying Litigations, all other Loss for which PPB has become legally obligated to pay in connection with each of the Underlying Litigations, and any other benefits respectively due under each of the 2017-2018 Zurich Policy and the 2020-2021 Columbia Policy;

4. For foreseeable consequential damages, in an amount to be proven at trial;

5. For all other damages proximately caused by each of Defendant Zurich's and Defendant Columbia's bad faith, in an amount to be proven at trial;

6. For exemplary and punitive damages;

7. For interest as allowed by law;

8. For PPB's attorneys' fees and costs of suit in this action; and

9. For such other and further relief as the Court may deem just and proper.

Dated: July 18, 2022

Respectfully submitted,

LOPEZ, BARK & SCHULZ, LLP

By: _____
Harry J. Schulz, III
Attorneys for Plaintiff
Pacific Premier Bancorp, Inc.

**JURY TRIAL DEMAND**

1. PPB hereby demands trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: July 18, 2022

Respectfully submitted,

LOPEZ, BARK & SCHULZ, LLP

By: _____
Harry J. Schulz, III
Attorneys for Plaintiff
Pacific Premier Bancorp, Inc.