Susan Koehler Sullivan, State Bar No. 156418
*susan.sullivan@clydeco.us*
Patrick R. Emerson, State Bar No. 330610
*patrick.emerson@clydeco.us*
CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600
Facsimile: (213) 358-7650

Attorneys for Defendant
ZURICH AMERICAN INSURANCE COMPANY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| PACIFIC PREMIER BANCORP, INC. a Delaware corporation, and PACIFIC PREMIER BANK, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, a New York corporation, and COLUMBIA CASUALTY COMPANY, an Illinois corporation, <br><br> Defendants. | Case No. 8:22-cv-00842-CJC-DFMx <br><br> Hon. Cormac J. Carney <br> Courtroom 9 B <br><br> **DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (Fed. R. Civ. P. 12(b)(6))** <br><br> Date: September 26, 2022 <br> Time: 1:30 p.m. <br> Courtroom: 9 B |

6973299.3

1

Case No. 8:22-cv-00842-CJC-DFMx

DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT (Fed. R. Civ. P. 12(b)(6))

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.     INTRODUCTION ................................................................................5

II.    ARGUMENT ......................................................................................7

    A.    There Is No Requirement that "Wrongful Acts" Must Be Committed by an "Executive Officer" for the Lending Act Exclusion to Apply ..................................................................7

    B.    Plaintiffs' Opposition Fails to Identify Any Facts Falling Outside the Scope of the Lending Act Exclusion. ................................10

    C.    Zurich Is Only Required to Advance Actually Covered Defense Costs.................................................................14

III.   CONCLUSION ................................................................................17

6973299.3                          2              Case No. 8:22-cv-00842-CJC-DFMx

DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT (Fed. R. Civ. P. 12(b)(6))

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Acacia Research Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*
   No. SACV 05-501, 2008 WL 4179206 (C.D. Cal. Feb. 8, 2008)..........................17

*Axis Surplus Ins. Co. v. Reinoso*
   208 Cal. App. 4th 181 (Ct. App. 2012)...................................................16

*Bank of Camilla v. St. Paul Mercury Ins. Co.*
   939 F. Supp. 2d 1299 (M.D. Ga. 2013) ...............................................12

*Blue Ridge Ins. Co. v. Jacobsen*
   25 Cal. 4th 489 (2001) ......................................................................16

*Braden Partners, LP v. Twin City Fire Ins. Co.*
   No. 14-cv-01689-JST, 2017 WL 63019 (N.D. Cal. Jan. 5, 2017) ........................17

*Global Fitness Holdings, LLC v. Navigators Management Company, Inc.*
   854 F. App'x 719 (6th Cir. 2021) ...................................................8, 9

*Health Net, Inc. v. RLI Ins. Co.*
   206 Cal. App. 4th 232 (Ct. App. 2012)................................................17

*Impac Mortg. Holdings Inc. v. Houston Cas. Co.*
   No. SACV 11-1845-JST, 2013 WL 4045362 (C.D. Cal. Feb. 26, 2013).............15

*Itzhaki v. U.S. Liab. Ins. Co.*
   536 F. Supp. 3d 651 (C.D. Cal. 2021) ...............................................15

*J & J Realty Holdings v. Great Am. E & S Ins. Co.*
   839 F. App'x 62 (9th Cir. 2020) .........................................................9

*Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*
   636 F. Supp. 2d 995 (C.D. Cal. 2009) ..........................................12, 15

*Millennium Laboratories, Inc. v. Allied World Assurance Co.*
   No. 12-CV-2280, 2013 WL 12072536 (S.D. Cal. July 22, 2013) .................15, 17

6973299.3       3       Case No. 8:22-cv-00842-CJC-DFMx

DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT (Fed. R. Civ. P. 12(b)(6))

*Minkler v. Safeco Ins. Co. of Am.*

    49 Cal. 4th 315 (2010) ............................................................... 9

*Okada v. MGIC Indem. Corp.*

    823 F.2d 276 (9th Cir. 1986).................................................... 17

*Petersen v. Columbia Cas. Co.*

    No. SACV 12-00183, 2012 WL 5316352 (C.D. Cal. Aug. 21, 2012)............ 16, 17

*RHBT Fin. Corp. v. St. Paul Mercury Ins. Co.*

    No. 0:03-3295-1, 2004 WL 5806112 (D.S.C. Aug. 12, 2004) .............................. 12

*Royalty Carpet Mills, Inc. v. ACE Am. Ins. Co.*

    No. SA CV 16-0648-DOC, 2017 WL 4786107 (C.D. Cal. July 17, 2017) .......... 17

*Safeco Ins. Co. v. Thomas*

    No. 13-CV-0170-AJB, 2013 WL 12123852 (S.D. Cal. Nov. 26, 2013) ................ 9

*United Farm Workers of Am. v. Hudson Ins. Co.*

    No. 1:18-cv-0134, 2019 WL 1517568 (E.D. Cal. Apr. 8, 2019) ........................... 16

**Statutes**

Fed. R. Civ. P. 12(b)(6) ......................................................... 5, 17

**Treatises**

HON. H. WALTER CROSKEY (RET.) ET AL., CALIFORNIA PRACTICE GUIDE: INSURANCE

LITIGATION § 7:1718 (Aug. 2022 Update) ................................................... 9

6973299.3

4

Case No. 8:22-cv-00842-CJC-DFMx

DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT (Fed. R. Civ. P. 12(b)(6))

Defendant Zurich American Insurance Company ("Zurich" or "Defendant") respectfully submits this Reply in support of its Motion to Dismiss (Fed. R. Civ. P. 12(b)(6)) the First Amended Complaint of Pacific Premier Bancorp, Inc. ("Bancorp") and Pacific Premier Bank (the "Bank," collectively "Plaintiffs").

## I.  INTRODUCTION

Plaintiffs' lawsuit should be dismissed because the Underlying Actions are excluded in their entirety under the Policy's Lending Act Exclusion.  Nothing in Plaintiffs' Opposition alters this conclusion.  The Bank is a Defendant in the Underlying Actions for a simple reason—because of its lending relationship with the AEI Defendants.  By lending money to AEI Defendants, the Bank carried out "Lending Acts" as defined under the Policy.

In their Opposition, Plaintiffs do not dispute that providing credit and loans are "Lending Acts" under the Policy.  They do not dispute that Grandpoint Capital Inc.—to which Plaintiffs are the alleged corporate successors—chose *not* to purchase coverage under the Policy for "Lending Acts."  Further, they do not dispute that the Lending Act Exclusion requires only "a *minimal* causal connection or *incidental* relationship" between the alleged "Wrongful Acts" and Lending Acts. Instead, Plaintiffs offer several arguments peripheral to the issues, which are heavy on rhetoric but lacking any supporting authority.  These are unavailing.

First, Plaintiffs propose reading the Policy to require that Wrongful Acts must be committed by an "Executive Officer" for the Lending Act Exclusion to apply. However, this depends on a tortured and illogical reading of the Policy.  Plaintiffs provide *no* authority in support of its proffered interpretation, and there is none in California or elsewhere.  On the contrary, both the plain language of the Policy and available authorities show that no such requirement exists.

Second, Plaintiffs essentially cut-and-paste their assertions from the First Amended Complaint ("FAC") into their Opposition, averring that certain "Wrongful Acts" alleged in the Underlying Actions supposedly have "no connection" with

"Lending Acts" or do not involve the Bank providing loans directly to the underlying Plaintiffs.  However, Plaintiffs fail to show that *any* of the alleged "Wrongful Acts" lack a causal nexus with Lending Acts.  To the contrary, Plaintiffs have no counter to the essential fact that *all* of the allegations against the Bank in the Underlying Actions *depend* upon and flow from the Bank's lending relationship with AEI Defendants.  Indeed, Plaintiffs in the Underlying Actions expressly allege that the Bank's loans to the AEI Defendants were "necessary," "essential," and "made possible" the Ponzi scheme, which could not have been perpetrated "but for" the loans.  They further allege that the Bank continued to lend to AEI Defendants even after it knew that AEI Defendants' operation was a scam.  These allegations clearly meet California's "minimal causal connection or incidental relationship" standard.

Third, although the Policy is clear that the "duty to defend" rests with the insured, in a detour leading nowhere, Plaintiffs assert that Zurich bears this duty.  In fact, the Lending Act Exclusion bars coverage regardless, so the Court need not reach this issue.  Nonetheless, California law is clear that the "duty to defend" standard does not apply where, as here, the insurer has disclaimed any such duty and has undertaken only a duty to *advance* defense costs that it determines are covered.

As the Lending Act Exclusion bars coverage, the FAC fails to allege sufficient facts to support Plaintiffs' claims for breach of contract, declaratory relief, and "bad faith," all of which depend on the existence of coverage.  Accordingly, Zurich respectfully requests that the Court grant its Motion and dismisses the FAC with prejudice.

6

Case No. 8:22-cv-00842-CJC-DFMx

DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT (Fed. R. Civ. P. 12(b)(6))

## II.     ARGUMENT

### A.     There Is No Requirement that "Wrongful Acts" Must Be Committed by an "Executive Officer" for the Lending Act Exclusion to Apply.

In a turnabout from the allegations in their Complaint and FAC that Zurich "ignore[d] the fact that the operative pleadings … include allegations of Wrongful Acts which are separate from … Lending Acts," Plaintiffs now oppose Zurich's Motion by asserting that, in effect, it is *immaterial* whether the Underlying Actions include Wrongful Acts in connection with Lending Acts.  Compl. 7:21-25; FAC 10:24-11:1.  The Bank's new argument posits that for the Lending Act Exclusion to apply, the Wrongful Acts can only be committed by an "Executive Officer" as that term is defined in the Policy.  Opp. 9:23-10:2.  In short, the Bank attempts to use the Policy's severability provision (intended to protect innocent insureds) to fabricate a new (non-existent) requirement for the Lending Act Exclusion.

The Bank's tortured reading of the Policy ignores the plain language, is patently unreasonable, and is unsupported in the Opposition by citation to *any* authority.  The provision at issue (the "Severability Provision ") states:

> For the purpose of determining the applicability of any exclusion set forth in this Section III, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and under Insuring Clauses A.3, B, C and D only the **Wrongful Act** or knowledge of an **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.[1]

FAC Ex. 4, p. 56.

---

[1] Imputation between "Insured Persons" is not at issue here because the Bank is not an "Insured Person"—including only certain "natural persons" and "Independent Contractors."  FAC Ex. 4, p. 53 ("Insured Persons").

7

The plain meaning of this provision is *not* that a "Wrongful Act" by an "Executive Officer" is a *requirement* for any exclusion to apply. Rather, the Severability Provision ensures that only allegations against an Executive Officer (as opposed to, for example, a lower-level employee) can be imputed to the Bank. However, imputation is wholly irrelevant here, because the allegations in the Underlying Actions are already *directly* against the Bank.

In *Global Fitness Holdings, LLC v. Navigators Management Company, Inc.*, 854 F. App'x 719, 721 (6th Cir. 2021), the Sixth Circuit considered a materially identical policy provision and squarely rejected the same reading proposed by Plaintiffs. The issue in that case was whether an exclusion for "liability under any contract" applied to a class action against the insured gym owners ("Global Fitness"), which alleged deceptive business practices in the sale of gym memberships. Affirming summary judgment for the insurer, the court considered whether the following severability provision prevented the exclusion from applying:

> [F]or the purpose of determining the applicability of the exclusions, only the Wrongful Acts of any president, chief executive officer or chief financial officer of [Global Fitness] shall be imputed to the Company.

*Global Fitness*, 854 F. App'x at 721 (internal quotation marks omitted). The insured argued that, because only wrongful acts by lower-level employees were at issue in the class action, the requirement of Wrongful Acts by a "president, chief executive officer or chief financial officer" had not been met. The court rejected this argument:

> [T]o accept this argument we would have to recast the [underlying class action] as a vicarious-liability suit. The plaintiffs in that case did not attempt to impute any employee's wrongful acts to Global Fitness. Rather, they alleged that Global Fitness engaged in "common polic[es] and practice[s]" that harmed them by misrepresenting contractual terms

1    …. The [class action] plaintiffs alleged that Global Fitness ***itself***
2    ***harmed them***—not some employee whose actions should be imputed
3    to the company—so the "severability of exclusions" clause does not bar
4    application of the contractual-liability exclusion.

5    *Id.* (emphasis added).

6        Ninth Circuit and California case law reinforces that severability provisions
7    serve to protect *innocent* insureds from the conduct of *culpable* insureds.  *See J & J*
8    *Realty Holdings v. Great Am. E & S Ins. Co.*, 839 F. App'x 62, 65 (9th Cir. 2020)
9    (citing *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315 (2010)); *see also Safeco*
10   *Ins. Co. v. Thomas*, No. 13-CV-0170-AJB, 2013 WL 12123852, at *5 (S.D. Cal.
11   Nov. 26, 2013) ("[A] lay insured would anticipate that the intentional act of one
12   insured would not, in and of itself, bar liability coverage of another insured….").  A
13   treatise cited by Plaintiffs in the Opposition concurs.  *See* HON. H. WALTER
14   CROSKEY (RET.) ET AL., CALIFORNIA PRACTICE GUIDE: INSURANCE LITIGATION §
15   7:1718 (Aug. 2022 Update) ("Many D&O policies contain a 'severability' … clause
16   stating that the actions of one director or officer 'will *not* be imputed *to any other*
17   *director or officer*' for the purpose of specified exclusions."); Opp. 15:14-17.

18       Here, as in *Global Fitness*, the Underlying Actions do not allege vicarious
19   liability.  The allegations in the Underlying Actions are expressly and directly
20   against the Bank, and the Bank *itself* is alleged to have harmed plaintiffs.  Indeed,
21   besides other entities and individuals not at issue here, only the Bank is named as a
22   defendant in the Underlying Actions.

23       In short, the Severability Provision is irrelevant to this case.  There is no issue
24   concerning imputation of "Wrongful Acts" by an "Executive Officer" to the Bank
25   because the Bank's *own conduct* is at issue.  Moreover, Plaintiffs have no basis for
26   their argument that the Severability Provision imposes an additional requirement for
27   the Lending Act Exclusion to apply (i.e. allegations against an Executive Officer).
28   Neither the plain language of the Severability Provision nor any case law supports

1   Plaintiffs' effort to avoid the application of the Lending Act Exclusion on this

2   contrived basis.

3           **B.      Plaintiffs' Opposition Fails to Identify Any Facts Falling Outside**

4                    **the Scope of the Lending Act Exclusion.**

5           The entire basis for the Bank's involvement in the Underlying Actions is its

6   lending relationship with AEI Defendants.  The Underlying Actions allege that the

7   Bank's loans and extensions of credit to AEI Defendants had the effect of propping

8   up AEI Defendants' Ponzi scheme, in turn allowing the Ponzi scheme to damage the

9   Pools and their investors.  In short, the Underlying Actions plainly allege that the

10  Bank engaged in "Lending Acts" within the meaning of the Lending Act Exclusion,

11  which conduct serves as the gravamen for *all* of the allegations against the Bank.

12          Plaintiffs assert in the Opposition that because the Pools' depository accounts

13  "were not funded by loans from [the Bank]" but by investors, "any alleged

14  Wrongful Acts … or resulting damages" are not in connection with a "Lending

15  Act."  Opp. 11:14-19.  But how the Pools' accounts were funded is immaterial.  The

16  Bank's lending activities do not have to implicate every aspect of the Ponzi scheme.

17  For the Lending Act Exclusion to apply, all that is required is that the allegations

18  against the Bank involve conduct that bears a "minimal causal connection or

19  incidental relationship" to a "Lending Act."  This encompasses both "direct" and

20  "indirect" connections and requires *less* than "but for" causation.  Further, the

21  injured party need not itself have been the subject of the insured's excluded conduct.

22  Plaintiffs do not dispute any aspect of the applicable standard as set forth in the

23  Motion.  *See* MTD 17:5-19.  Yet, the Underlying Actions could not be clearer in

24  drawing the connection between the Bank's loan activity with AEI Defendants and

25  the resulting damages to the Pools and their investors.

26

27

28

10

1    For example, the Receiver alleges in the Hamstreet Litigation[2] that the

2    "Pacific Premier [line of credit] was an *essential* part of AEI Defendants' misuse of

3    Pool assets" and was "an *essential* component to the continuation of the Ponzi

4    scheme."  FAC Ex. 1, ¶ 63 (emphasis added).  The Receiver further alleges that

5    "[t]he Pacific Premier lines of credit to AEI Defendants *made possible* the sales of

6    investments in the Pools from no later than June 2008 to the collapse of the Pools in

7    2019," and that "*[w]ithout the Bank lines of credit* to buffer periods when new

8    investor money was not sufficient to make interest payments and distributions ...

9    AEI's insolvency would have been obvious."  *Id.* at ¶¶ 32, 81 (emphasis added).

10    Likewise, plaintiffs in the Anderson Litigation and Beattie Litigation allege

11    that the Bank's "lines of credit to American Equites ... made possible the sales of ...

12    securities from no later than June 2008 to the collapse of the [Pools]."  FAC Ex. 2, ¶

13    65; FAC Ex. 3, ¶ 75.  The Bank "provid[ed] credit advances of necessary funding

14    secured by receivable contracts taken from the [Pools]."  *Id*.  Plaintiffs further allege

15    that: "*But for* Pacific Premier's ongoing financing and its cooperation in quietly

16    winding down the … guidance line, the insolvency of American Equities and the

17    [Pools] would have been apparent, and American Equities would not have been able

18    to continue to sell … securities after 2008."  FAC Ex. 2, ¶ 19 (emphasis added);

19    FAC Ex. 3, ¶ 25 (emphasis added).

20    Thus, it makes no difference that the Bank may not have provided loans to the

21    Pools *themselves*.  The conduct alleged by the Pools and their investors consists

22    entirely of Lending Acts to the benefit of AEI Defendants, who could not have

23    perpetrated the Ponzi scheme without the Bank's assistance.  Even if the Lending

24    Act Exclusion required but for causation (which it does not) this standard would

25    easily be satisfied based on these allegations.  There is no serious question that the

26

27

28
_____
[2] As Plaintiffs note, the Hamstreet Litigation "shares the same operative facts with
[the] other Underlying Litigations."  Opp. 11:21-22.

lesser standard required—of only a minimal causal connection or incidental relationship—is satisfied here.[3]

Plaintiffs also assert that the Underlying Actions contain "allegations of wrongful conduct by PPB which is unrelated to any lending activity."[4]  Opp. 2:4-5. A large portion of this argument repeats *verbatim* allegations in the FAC, already addressed in the Motion.  Opp. 12:5-13:2; *cf.* FAC 4:18-5:11; MTD 21:11-19. Specifically, Plaintiffs enumerate the same six allegations from the Hamstreet Litigation that they assert are unrelated to "Lending Acts."  According to Plaintiffs, each of these depends on the Bank's awareness, knowledge, concealment, or failure to detect or disclose the conduct of AEI Defendants (also referred to as the "Pool Managers").[5]

---

[3] Plaintiffs also fail entirely to address the authorities cited in Zurich's Motion that found conduct "in connection with" a Lending Act on similar facts.  *See Bank of Camilla v. St. Paul Mercury Ins. Co.*, 939 F. Supp. 2d 1299 (M.D. Ga. 2013); *RHBT Fin. Corp. v. St. Paul Mercury Ins. Co.*, No. 0:03-3295-1, 2004 WL 5806112, at *2-*4 (D.S.C. Aug. 12, 2004).

[4] Plaintiffs accuse Zurich of "foisting" the burden onto Plaintiffs of proving the Lending Act Exclusion does *not* apply.  Opp. 14:11-15.  Zurich's Motion does no such thing.  The central argument in Zurich's Motion is precisely that the Lending Act Exclusion applies based on the allegations in the Underlying Actions, and nowhere does Zurich assert that Plaintiffs have failed to show it does *not* apply. Zurich notes that Plaintiffs have the burden of showing their claim falls "within the basic scope of coverage."  But this is not the same thing as Plaintiffs having the burden of showing an exclusion applies.  *See Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*, 636 F. Supp. 2d 995, 1004 (C.D. Cal. 2009) ("[The insured] must establish that the underlying claims are within the basic scope of coverage.  If [the insured] meets its burden, [the insurer] must demonstrate that the claims are specifically excluded.").

[5] For example: "[The Bank] 'was aware of the restrictions on the use of cash imposed on the Pool Managers as manager of the Pools' and 'knew that the Pool Managers were violating those restrictions....'"  Opp. 12:6-7.

However, each of the allegations parsed by Plaintiffs from the Hamstreet Litigation is dependent upon the fact that the Bank was aware of, knew, concealed, or failed to detect or disclose the conduct *because of its lending relationship with AEI Defendants and information learned through that relationship*—which Plaintiffs simply ignore.  The Receiver alleges:

- "AEI provided Pacific Premier with financial statements in 2008 that reflected the scale of its illicit 'borrowing' from the Pools…."  FAC Ex. 1, ¶ 61.

- "In or around 2008 and 2009, Pacific Premier and AEI agreed to a scheme to use Pool assets to allow AEI to pay off [a separate loan with the Bank not connected to the Pools].  Despite knowing AEI managed and had fiduciary duties to the Pools, Pacific Premier worked with AEI to use seven advances on the Pacific Premier LOC totaling $605,000 to pay off the [loan].  Those advances were secured by contracts Pacific Premier knew were owned by the Pools."  *Id.* at ¶ 64.

- "In the spring of 2014, Pacific Premier renewed the Pacific Premier [line of credit] for the ninth time.  In underwriting the renewal, Pacific Premier analyzed … AEI's internally prepared financial statements and the overall operations of AEI Defendants, including management of the Pools."  *Id.* ¶ 76.

- "Over the course of several months [in 2015], bank representatives met with Miles and … Pacific Premier did not terminate its relationship or cut off funding to AEI …. Instead, it provided extensions on the maturing loans until quietly passing them off its books to a financing company associated with [Thomas Young, the Bank's founder]."  *Id.* ¶ 79.

- "Pacific Premier was fully aware of AEI's precarious financial position, as the Miles and Wile candidly discussed it with Pacific Premier."  *Id.* ¶ 59.

Plainly, the Bank's *specific acts* called out in the Opposition did not occur in a vacuum. Rather, those acts only occurred in connection with the Bank's lending relationship with AEI Defendants.

Lastly, Plaintiffs repeat their argument that Zurich has overlooked "extrinsic facts" outside the Lending Act Exclusion. Opp. 1:26-28. However, although the Underlying Actions have been pending for *over two and a half years*, Plaintiffs offer nothing in support of this assertion except the same discovery response raised in the FAC. Plaintiffs claim the Receiver's denial of a requested admission that the Pools' claims against the Bank "[we]re asserted *exclusively* in connection with *credit advances* made by the Bank to managers of the Pools" is somehow pertinent. *Id.* at 13:3-6 (emphasis added). It is not. As admitted by Plaintiffs, the Hamstreet Litigation involves *both* credit advances and traditional loans. *See id.* 11:22-23 ("the issuance of loans/extensions of credit and the related servicing thereof"); *see also* MTD 22:1 n. 9. Thus, the Receiver's response is merely a statement of the obvious—that the Receiver's claims are not "exclusively" in connection with credit advances. As both credit advances and loans are "Lending Acts" as defined, which Plaintiffs do not dispute, this is of no moment to the application of the Lending Act Exclusion.

In sum, the allegations in the Underlying Actions fall squarely within the Lending Act Exclusion, which precludes coverage entirely for the Underlying Actions.

## C.     Zurich Is Only Required to Advance Actually Covered Defense Costs.

Lastly, Plaintiffs spill a great deal of ink in arguing that the Policy implicates a "duty to defend" (or that the exact same standard should apply) rather than a duty to advance defense costs. *See, e.g., Opp.* 14:28-15:3. This is ultimately immaterial, and the Court need not reach this issue because the Lending Act Exclusion precludes coverage for the Underlying Actions—and would do so even if Zurich had

a duty to defend.  *Itzhaki v. U.S. Liab. Ins. Co.*, 536 F. Supp. 3d 651, 655 (C.D. Cal. 2021) ("Defendants do not owe a duty to defend if any … exclusions or limitations eliminate *any potential* for coverage.").  Nonetheless, Plaintiffs are simply wrong on this point.  The Policy could not be clearer that the *insured* (not Zurich) bears the duty to defend, with the Policy providing as follows in the Declarations: [6]

Item 8.  Defense:

A.  Management Liability Coverage Part:
    [X] **Insureds**' Duty to Defend    [ ] Insurer's Duty to Defend    [ ] Not Purchased

B.  Non-Indemnifiable Excess DIC Liability Coverage Part:
    [ ] **Insureds**' Duty to Defend    [ ] Insurer's Duty to Defend    [X] Not Purchased

C.  All Other **Liability Coverage Parts**:
    [X] **Insureds**' Duty to Defend    [ ] Insurer's Duty to Defend    [ ] Not Purchased

FAC Ex. 4, p. 11.

The duty to defend standard is inapplicable to policies that "clearly and conspicuously" disclaim this duty.  *See Jeff Tracy*, 636 F. Supp. 2d at 1003; *Impac Mortg. Holdings Inc. v. Houston Cas. Co.*, No. SACV 11-1845-JST, 2013 WL 4045362, at *5-*6 (C.D. Cal. Feb. 26, 2013); *Millennium Laboratories, Inc. v. Allied World Assurance Co.*, No. 12-CV-2280, 2013 WL 12072536, at *4 (S.D. Cal. July 22, 2013).  "Courts applying California law have found that the rules applying to interpreting or establishing a duty to defend are not applicable for a duty to advance

---

[6] The Policy's "Defense and Settlement" provision in the Policy likewise provides that the insured has the duty to defend:

1.  Insureds' Duty to Defend

    a.  With respect to any **Liability Coverage Part**, if, pursuant to Item 8 of the Declarations, it is the duty of the **Insureds** to defend **Claims**, then, subject to this Subsection VII.A. it shall be the duty of the Insureds and not the duty of the Insurer to defend any Claims and the Insureds will choose defense counsel.

FAC Ex. 4, p. 25.

1   claims expenses." *Petersen v. Columbia Cas. Co.*, No. SACV 12-00183, 2012 WL

2   5316352, at *9 (C.D. Cal. Aug. 21, 2012); *United Farm Workers of Am. v. Hudson*

3   *Ins. Co.*, No. 1:18-cv-0134, 2019 WL 1517568, at *11 (E.D. Cal. Apr. 8, 2019).

4   Absent a duty to defend, the Court need not apply *any legal rule based on this duty*.

5   *Petersen*, 2012 WL 5316352, at *10 (C.D. Cal. Aug. 21, 2012).  Instead, "the action

6   should be evaluated as a normal coverage dispute, more similar to a duty to

7   indemnify." *Id.* at *8.[7]

8        Plaintiffs next assert that the Policy's allocation provision somehow

9   invalidates Zurich's clear disclaimer of the duty to defend.  Again, a plain reading of

10  the Policy proves Plaintiff wrong.  As an initial matter, allocation requires "Loss

11  covered by" the Policy.  FAC Ex. 4, p. 23.  Here, there is no such Loss, so allocation

12  is irrelevant.  In any event, the allocation provision *reinforces* that Zurich need only

13  pay *covered* defense costs.  Part B. of the allocation provision, which Plaintiffs omit

14  in their Opposition, provides as follows (in relevant part):

16  B.  If the Insurer and the **Insureds** cannot agree on an allocation of **Defense Costs**, the Insurer shall advance on a current basis amounts that the Insurer believes to be covered **Defense Costs** until a different allocation is

17  negotiated, arbitrated or judicially determined.  Any such negotiated, arbitrated or judicially determined allocation

18  shall be applied retroactively to all **Defense Costs** on account of such **Claim**, notwithstanding any prior advancement to the contrary.  Any allocation or advancement of **Defense Costs** on account of a **Claim** shall

19  not apply to the allocation of other **Loss** on account of such **Claim**.

21  *Id.* at 24 (emphasis added).

22       Thus, Zurich reserves the right to advance only defense costs that it believes

23  "to be covered Defense Costs," and there is no requirement to advance defense costs

25  [7] The duty to indemnify is "much narrower" than the duty to defend and an insurer

26  "only has a duty to indemnify the insured for covered claims, and no duty to pay for

    noncovered claims because the insured did not pay premiums for such coverage."

27  *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 497, 502-503 (2001); *Axis Surplus*

28  *Ins. Co. v. Reinoso*, 208 Cal. App. 4th 181, 191 (Ct. App. 2012).

where Zurich determines there is no covered Loss.  Accordingly, the allocation provision is consistent with Zurich's disclaimer of the duty to defend and there is no such duty here.[8]

Plaintiffs are incorrect that the Zurich policy includes a "duty to defend," but even under a duty to defend standard, coverage for the Underlying Actions is excluded by the Lending Act Exclusion.

## III.    CONCLUSION

For the reasons set forth in its Motion and this Reply, Zurich respectfully requests that the Court dismiss with prejudice Plaintiffs' FAC in its entirety as to Zurich, under Federal Rule of Civil Procedure 12(b)(6).

---

[8] The authorities cited by Plaintiffs are inapposite.  In *Royalty Carpet*, the provision concerning defense costs provided that an outside/third party (not the insurer) would determine the allocation between covered and uncovered loss.  *Royalty Carpet Mills, Inc. v. ACE Am. Ins. Co.*, No. SA CV 16-0648-DOC, 2017 WL 4786107, at *10 (C.D. Cal. July 17, 2017).  Both *Olympic Club* and *Legacy Partners* have already been distinguished in the situation where, as here, the policy at issue provides for *conditional* payment of defense costs.  *Petersen*, 2012 WL 5316352, at *9; *see also Millennium Laboratories*, 2013 WL 12072536, at *4-*5.  In *Health Net*, the policy at issue contained an express duty to defend and the court found that the endorsement removing this duty only had the effect of changing the *timing* of payment.  *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 259 (Ct. App. 2012).  In *Braden Partners*, unlike here, the policy provided that the insurer would *necessarily* advance defense costs for claims "prior to disposition of such claims."  *Braden Partners, LP v. Twin City Fire Ins. Co.*, No. 14-cv-01689-JST, 2017 WL 63019, at *5 (N.D. Cal. Jan. 5, 2017).  Lastly, *Acacia* and *Okada* were not decided under California law.  *See Acacia Research Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. SACV 05-501, 2008 WL 4179206, at *11 (C.D. Cal. Feb. 8, 2008); *Okada v. MGIC Indem. Corp.*, 823 F.2d 276, 281 (9th Cir. 1986).

1   Dated:  September 12, 2022          CLYDE & CO US LLP

2                                      By:    _/s/ Susan Koehler Sullivan_

3                                             SUSAN KOEHLER SULLIVAN

4                                             PATRICK R. EMERSON
                                              Attorneys for Defendant
5                                             ZURICH AMERICAN INSURANCE

6                                             COMPANY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28