TRAVIS WALL (SBN 191662)
travis.wall@kennedyslaw.com
TERI MAE RUTLEDGE (SBN 261229)
terimae.rutledge@kennedyslaw.com
KENNEDYS CMK LLP
455 Market Street, Suite 1900
San Francisco, CA 94105
Telephone:  415-323-4460
Facsimile:   415-323-4445

EDWARD J. TAFE
Edward.tafe@cna.com
CORPORATE LITIGATION
2121 North California Blvd., Suite 760
Walnut Creek, CA 94596
Telephone:  415-932-7408
Facsimile:   866-534-1036

Attorneys for Defendant
COLUMBIA CASUALTY COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC PREMIER BANCORP, INC., and  PACIFIC PREMIER BANK<br><br>Plaintiff,<br><br>vs.<br><br>COLUMBIA CASUALTY COMPANY, and TRAVELERS CASULATY AND SURETY COMPANY,<br><br>Defendants. | Case No. 8:22-cv-00842-PA-DFM<br><br>**STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF COLUMBIA CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Date:** **November 25, 2024**<br>**Time:** **1:30 p.m.**<br>**Judge:** Hon. Percy Anderson<br>**Ctrm:** 9A<br><br>Complaint Filed: April 21, 2022<br>Trial Date:   January 28, 2025 |

## STATEMENT OF UNCONTROVERTED FACTS

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 1.    In this coverage action, Plaintiffs Pacific Premier Bancorp, Inc. and Pacific Premier Bank (collectively "Pacific Premier") seek coverage for defense and indemnity expenses in connection with three actions entitled *Clyde A. Hamstreet & Associates, LLC, as receiver, v. American Equities Inc.,* Superior Court of the Court of Washington, Clark County, Case No. 20-2-00507-06 (the "*Hamstreet* litigation"), *Diane L. Anderson Revocable Trust v. Davis Wright Tremain LLP*, United Staes District Court, District of Oregon, Case No. 3:20-cv-01194-AC (the "Anderson litigation"), and *Beattie v. Davis Wright Tremaine LLP*, Circuit Court of the State of Oregon, County of Multnomah, Case No. 20CV09419 (the "*Beattie* litigation"). | Wall Decl, **Ex. 1** (Pacific Premier Second Amended Complaint ("Pacific Premier SAC") ¶ 1, at p. 8). |
| 2.    In February 2020, plaintiff Clyde A. Hamstreet & Associates, LLC (the "Receiver"), as receiver for the 15 investment pools created by American Equities, Inc. ("AEI"), filed a complaint against AEI, American Eagle Mortgages Management, LLC ("AEMM"), Ross Miles, and Maureen Wile (collectively the "AEI defendants"). In August 2020, the Receiver amended its complaint to add Pacific Premier as a defendant. | Wall Decl, **Ex. 1** (Pacific Premier SAC ¶ 9, at p. 9). |
| 3.    The Receiver in the *Hamstreet* litigation alleged that, contrary to promissory notes and related investment documents, the AEI defendants used the investment pools to perpetuate a Ponzi scheme whereby the pools commingled assets across the operations and used new investor money to fund obligations owed to earlier investors. | Wall Decl., **Ex. 2** (Hamstreet Second Amended Complaint ("Hamstreet SAC") ¶ 32, at p. 33). |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 4.      In the *Hamstreet* litigation, the Receiver alleges that Pacific Premier's predecessors, Regents Bank and Grandpoint Bank, and later Pacific Premier committed wrongdoing in connection with the Ponzi scheme, including (i) providing credit to the AEI defendants that allowed them to operate and conceal a Ponzi scheme and continued to loan funds to the AEI defendants after the bank reasonably should have known that the managers were misappropriating investor's funds, (ii) failing to properly monitor the pools' deposit accounts and allowing managers to commingle funds across separate accounts, (iii) allowing the transfer of funds from deposit accounts to pay off loans in AEI or AEMM's name, and (iv) failing to notify the pools of breaches of fiduciary duty and breaches of contract by AEI and AEMM and the commingling of funds. | Wall Decl., **Ex. 2** (Hamstreet SAC ¶¶ 7, 57-84, at pp. 28, 39-48) |
| 5.      On the basis of those allegations, the Receiver sued Pacific Premier for breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and negligence. | Wall Decl., **Ex. 2** (Hamstreet SAC ¶¶ 87-88, 89-90, 93-94, at pp. 48-49). |
| 6.      The *Anderson* lawsuit is a putative class action on behalf of Oregon purchasers of American Equities securities, asserting claims for violation of the Oregon Securities Act. The Anderson plaintiffs allege that AEI, Miles, and Wile sold the underlying securities with the participation and material aid of their lawyers (Davis Wright Tremaine), the Pacific Premier, and Riverview Bank. | Wall Decl., **Ex. 3** (Anderson Second Amended Complaint ("Anderson SAC"). |
| 7.      In the *Anderson* lawsuit, the class asserted two claims for relief against Pacific Premier for participating or | Wall Decl., **Ex. 3** (Anderson SAC ¶¶ 74-80, 86-91, at pp. 110-12, 113-15). |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| materially aiding in the sales of securities in violation of ORS59.115 and ORS59.135 | |
| 8. The *Beattie* lawsuit arises from the same scheme alleged in the *Anderson* litigation, but was brought by eight individuals (from Washington and Oklahoma) who invested in the Pools, rather than as a putative class action. | Wall Decl, **Ex. 4,** (Beattie Second Amended Complaint, ("Beattie SAC"), ¶¶ 1-5, 18-26, at pp. 119-21, 126-29). |
| 9. The *Beattie* plaintiffs assert three claims for relief against Pacific Premier: two claims for participating or materially aiding in the sales of securities in violation of ORS 59.115 and ORS 59.135 and one claim for materially aiding in the sales of securities in violation Oklahoma securities law. | Wall Decl, **Ex. 4** (Beattie SAC ¶¶ 52-75, 83-89, 96-100, 107-12, at pp. 151-59, 161-63, 164-66, 167-68). |
| 10. In 2013, Regents Bank and Grandpoint Bank entered into a bank merger agreement pursuant to which Regents Bank merged with Grandpoint Bank as the surviving entity. | Wall Decl., **Ex. 5,** (Grandpoint/Regents Bank Merger Agreement at 1, Article 1, at p. 173). |
| 11. Premier Bank and Grandpoint Bank entered into a Bank Merger Agreement, effective June 25, 2018, through which Grandpoint bank merged into Premier Bank as the surviving entity. | Wall Decl., **Ex. 6,** (Pacific Premier/Grandpoint Bank Merger Agreement at 1, § 1, at p. 181). |
| 12. Under the June 25, 2018 merger agreement, Pacific Premier assumed all liabilities of Grandpoint Bank. | Wall Decl., **Ex. 6,** (Pacific Premier/Grandpoint Bank Merger Agreement at 2, § 6(b), at p. 182). |
| 13. The Receiver alleges that, beginning no later than 2008, Regents Bank and Grandpoint Bank provided a guidance line of credit that was necessary to provide an "illusion" of solvency and allowing the AEI defendants to continue their scheme. | Wall Decl, **Ex. 7,** (Clyde Hamstreet First Amended Complaint ("Hamstreet FAC") ¶¶ 35-53, 54, at pp. 200-05). |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 14.    According to the Receiver, Premier Pacific engaged in that conduct knowing that the loans did not meet industry standards and that the AEI defendants were breaching their fiduciary duties to the pools. | Wall Decl., **Ex. 7,** (Hamstreet FAC ¶¶ 55-56, at p. 205). |
| 15.    According to the Receiver, the bank's participation was an "essential component" of the Ponzi scheme through which Pacific Premier "knowingly provided substantial assistance to the AEI Defendants in their breaches of fiduciary duties to the Pools and breached its own independently-owned duties." | Wall Decl., **Ex. 7,** (Hamstreet FAC ¶ 57, at p. 206). |
| 16.    The Receiver  incorporated the allegations in its First Amended Complaint into its breach of fiduciary duty, aiding and abetting and negligence claims against Pacific Premier. The pleading does not add new factual allegations specific to any claim – rather they are all based on the same allegations of intentional conduct. | Wall Decl., **Ex. 7,** (Hamstreet FAC ¶¶ 60-63, 66-67, at pp. 206-07). |
| 17.    The borrower on the guidance line of credit changed from AEI to AEMM in or around January 2011. | Wall Decl., **Ex. 7** (Hamstreet FAC ¶43, at p. 202). |
| 18.    From 2006 to 2014, Regents Bank and later Grandpoint Bank advanced a total of $12,642,016 to AEI and AEMM under the guidance line of credit. | Wall Decl., **Ex. 8** (Portions of the Expert Report of Serena Morones ("Morones Report") at pp. 213, 218). |
| 19.    Grandpoint Bank's last advance on the guidance line of credit was issued on July 24, 2014. | Lack of evidence of additional advance on guidance line of credit after that date; *see also* Wall **Ex. 9,** (Pacific Premier Motion for Summary Judgment in *Hamstreet* litigation at 15:11-21 (asserting that guidance line of credit paid of by end of 2015)), Wall Decl., **Ex. 8,** (Morones Report, pp. 215-218). |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 20.    All loan advances on the guidance line of credit were paid off by November 24, 2015. | Lack of evidence of additional payments on guidance line of credit after that date; *see also* Wall Decl., **Ex. 9**, Pacific Premier Motion for Summary Judgment in *Hamstreet* litigation at 234:11-21 (asserting that guidance line of credit paid of by end of 2015)); Wall Decl., **Ex. 10** (Hamstreet Response to Pacific Premier Motion for Summary Judgment in *Hamstreet* action, at 296:5-7); Wall Decl. **Ex. 15** (Pacific Premier's Responses to Requests for Admission at 417-419 (particularly 419:8-9)). |
| 21.    There were no new investments into the AEI pools after the merger between Pacific Premier and Grandpoint Bank on June 25, 2018. | Lack of evidence of new investments after merger; *see also* Wall Decl., **Ex. 11** (Ex. K to the expert report Michael G. Ueltzen, retained by Hamstreet (showing last investment in 2017, p. 349); Wall Decl., **Ex. 3** (Anderson SAC ¶ 28, p. 72-73), Wall Decl. **Ex. 4** (Beattie SAC ¶ 34, p. 132). |
| 22.    The *Anderson* plaintiffs alleged that the last sale – i.e., the date of the last new investor money in the pools – was on December 14, 2017. | Wall Decl., **Ex. 3** (Anderson SAC ¶ 28, p. 72-73). |
| 23.    The *Beattie* plaintiffs allege that the last sale – i.e., the date of the last new investor money in the pools – was on December 14, 2017. | Wall Decl. **Ex. 4** (Beattie SAC ¶ 34, p. 132). |
| 24.    The AEI defendants were accused of using pool funds to loan money to related parties without collateral. According to the Receiver, from 2006 until April 2019, the AEI defendants lent a total of $8,447,712 through those uncollateralized loans. As of June 30, 2021, $5,193,190 in principal remained unpaid from those loans. | Wall Decl, **Ex. 12** (Portion of Expert Report of Gary Stoley, retained by Hamstreet, Uncollateralized Loan Exhibit, p. 353). |
| 25.    According to the Receiver, three of the uncollateralized loans originated after the June 25, 2018 merger between Pacific Premier and Grandpoint Bank. Those loans were for $20,500 | Wall Decl, **Ex. 12** (Portion of Expert Report of Gary Stoley, retained by Hamstreet, Uncollateralized Loan Exhibit, pp. 351-352). |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| (9/30/2018), $146,221 (12/13/2018), and $1,383 (3/31/2019), for a total of $168,104. Those loans were never repaid. | |
| 26.    In the *Hamstreet* litigation, the Receiver conceded that bank defendants were not jointly and severally liable for losses that occurred before the banks issued lines of credit or engaged in other conduct that materially aided and abetted the Ponzi scheme. | Wall Decl. **Ex. 10** (Receiver's Response to Motion for Summary Judgment, p. 330 (noting that the "Receiver has never claimed that Pacific Premier is liable for damages incurred by the Pools before it began lending to the Pool Managers")). |
| 27.    The Receiver contended that the pools were insolvent as early as 2008. | Wall Decl. **Ex. 10** (Receiver's Response to Motion for Summary Judgment in *Hamstreet,* p. 284:3-6). |
| 28.    The Receiver alleges that the pools as a whole incurred damages of $51,704,608 and that the AEI 600, Mexico 600, and Mexico 500 alone incurred damages of $17,665,212 | Wall Decl. **Ex. 11** (Ueltzen Report, p. 347); Wall Decl., **Ex. 2** (Hamstreet SAC ¶ 57, p. 39); Wall Decl, **Ex. 9** (Pacific Premier Motion for Summary Judgment in *Hamstreet* litigation at 238:6-239:24). |
| 29.    In 2023, Pacific Premier filed a motion for summary judgment as to all three claims in the *Hamstreet* litigation. | Wall **Ex. 9,** (Pacific Premier Motion for Summary Judgment in *Hamstreet* litigation). |
| 30.    In opposition to Pacific Premier's motion, the Receiver cited the same misconduct – alleging that Pacific Premier provided a guidance line of credit in 2008 and continued to renew it despite knowledge that the pool mangers were misusing funds and breaching their fiduciary duties to the pools. | Wall **Ex. 10,** (Receiver's Response to Motion for Summary Judgment in *Hamstreet* litigation, p. 305:19-21). |
| 31.    The Receiver contended that Pacific Premier knowingly allowed pool mangers to use pool assets as collateral for loans made to the pool mangers even though those transactions did not benefit the pools. | Wall **Ex. 10,** (Receiver's Response to Motion for Summary Judgment in *Hamstreet* litigation, p. 298:11-12). |
| 32.    According to the Receiver, the bank's misconduct also included the falsification of loan documents to help | Wall **Ex. 10,** (Receiver's Response to Motion for Summary Judgment in *Hamstreet* litigation, p. 298:11-17). |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF SUMMARY
JUDGMENT  //  CASE NO. 8:22-CV-00842-PA-DFM

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| the AEI defendants to transition the guidance line of credit from AEI to AEMM in 2011 to conceal the fact that AEI's credit worthiness had dropped because of $2,000,000 in questionable "loans" from the pools to the managers. | |
| 33.    The Receiver maintained that, far from engaging in ordinary business transactions with the AEI defendants, Pacific Premier was intimately familiar with the breaches of fiduciary duties to the pools and aided the scheme by "helping structure transactions, assisting in entity organization, and mis-documenting banking transactions." | Wall **Ex. 10,** (Receiver's Response to Motion for Summary Judgment in *Hamstreet* litigation, p. 315:20-316:1). |
| 34.    Pacific Premier moved for summary judgment on the negligence claim as well. In response to Pacific Premier's argument that its alleged misconduct did not proximately cause any harm to those pools, the Receiver countered that the guidance line of credit allowed the scheme to continue and that Pacific Premier "aided and abetted" improper transactions involving the pools' assets through "unsafe and unsound banking [practices] . . . exacerbated by turning a blind eye, and even participating in, blatantly improper transactions between AEI and the pools that badly damaged the pools' financial condition." | Wall **Ex. 9,** (Pacific Premier Motion for Summary Judgment in *Hamstreet* litigation, p. 320:8-11). |
| 35.    In response to arguments that Pacific Premier could rely on the "apparent authority" of the pool managers, the Receiver argued that Pacific Premier did much more than allow pool mangers to withdraw funds from accounts in the pool manager's names but instead "knowingly assisted the Pool Managers in structuring | Wall **Ex. 10,** (Receiver's Response to Motion for Summary Judgment in *Hamstreet* litigation, p. 328:20-26). |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF SUMMARY
JUDGMENT  //  CASE NO. 8:22-CV-00842-PA-DFM

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| transactions and concealing their conduct to the detriment of the Pools." | |
| 36.    The Receiver conceded that, without aiding and abetting liability, Pacific Premier would not have been liable to the pools at all. In its brief opposing Pacific Premier's motion for summary judgment, the Receiver noted that "it has never claimed that Pacific Premier is liable for damages incurred by the Pools before it began lending to the Pool Managers" and thus "the extent of liability attributable to . . . Pacific Premier requires a factual determination as to when [it] was acting in concert with the Pool Managers." | Wall **Ex. 10,** (Receiver's Response to Motion for Summary Judgment in *Hamstreet* litigation, p. 330:14-23). |
| 37.    Zurich American Insurance Company ("Zurich") issued a business liability policy to Grandpoint Capital Inc., at that time the owner of Grandpoint Bank, policy number DOP 0115355-02, effective April 20, 2017 to July 30, 2018. | Wall Decl., **Ex. 13** (Zurich Policy, p. 356). |
| 38.    The Zurich policy insured Grandpoint Capital and Grandpoint Bank for "all Loss for which the Company because legally obligated to pay on account of a Claim for a Wrongful Act, including Wrongful Acts in connection with the rendering of or failure to render Professional Services. | Wall Decl., **Ex. 13** (Zurich Policy, p. 359). |
| 39.    The Zurich policy defines "Wrongful Act" to include "any error, misstatement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the Company." | Wall Decl., **Ex. 13** (Zurich Policy, p. 360). |
| 40.    The Zurich policy was endorsed to include an Extended Reporting Period for the period from July 1, 2018 to July 1, 2024, with respect to Wrongful Acts | Wall Decl., **Ex. 13** (Zurich Policy, p.361). |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| committed or allegedly committed before July 1, 2018. | |
| 41.    The applicable insuring agreement in the Zurich policy had a limit of liability of $10,000,000 with a retention of $150,000 each Claim. | Wall Decl., **Ex. 13** (Zurich Policy, p. 356.a). |
| 42.    Columbia issued a Bankers Professional Liability Solutions policy to Pacific Premier Bancorp, Inc. as Named Insured, policy number 652124810, effective from June 30, 2020 to June 30, 2021, which contains a $5 million aggregate limit of coverage, subject to a $2 million self-insured retention. | Wall Decl., **Ex. 14** (Columbia Policy, p. 364). |
| 43.    The insuring agreement in the Columbia policy provides:<br><br>The Insurer shall pay on behalf of the **Insureds** that **Loss** resulting from any **Claim** if such **Claim** is first made against the **Insureds** during the **Policy Period** or the **Extended Reporting Period** , if applicable, for a **Wrongful  Act** in the rendering or failing to render **Professional Services**. | Wall Decl., **Ex. 14** (Columbia Policy, p. 366). |
| 44.    **Claim** means in relevant part:<br><br>1.  a written demand for monetary damages or non-monetary relief.<br><br>2.  a civil proceeding in a court of law or equity or arbitration, . . .<br><br>against an **Insured** alleging a **Wrongful Act**, including any appeal therefrom. | Wall Decl., **Ex. 14** (Columbia Policy, p. 389). |
| 45.    **Defense Costs** means reasonable and necessary fees costs and expenses, consented to by the Insurer (such consent not to be unreasonably withheld) and incurred by the **Insureds** in the | Wall Decl., **Ex. 14** (Columbia Policy, p. 366). |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| investigation, adjustment, defense or appeal of any covered **Claim**, and includes premium for appeal bonds, attachment bonds or similar bonds arising out of a covered judgment. The Insurer has no obligation to provide such bonds. **Defense Costs** shall not include salaries, wages, fees, overhead or benefit expenses associated with the directors, officers, and employees of the **Insured Entity**. | |
| 46. **Insured** means any **Insured Person** and **Insured Entity**. | Wall Decl., **Ex. 14** (Columbia Policy, p. 366). |
| 47. **Insured Entity** means the **Named Insured** and any **Subsidiary**, including any such entity as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country. | Wall Decl., **Ex. 14** (Columbia Policy, p. 366). |
| 48. **Interrelated Wrongful Acts** means any **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event. | Wall Decl., **Ex. 14** (Columbia Policy, p. 367). |
| 49. **Loss** means damages, settlements, judgments (including any award of pre-judgment and post-judgment interest on a covered judgment) and **Defense Costs** for which the Insured is legally obligated to pay on account of a covered Claim. However, **Loss** shall not include: <br> 1. criminal or civil fines, penalties or taxes imposed by law; <br> 2. matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed; <br> 3. any amount for which an **Insured** is absolved from payment by | Wall Decl., **Ex. 14** (Columbia Policy, p. 367). |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| reason of any covenant, agreement or court order; or<br><br>4. any actual or alleged fees or other compensation paid to, due to or claimed by the **Insureds**;<br><br>5. principal or interest on any loan, lease or extension of credit;<br><br>6. any amount which constitutes disgorgement, including restitution;<br><br>7. diminution in value or damages resulting from the diminution in value of money, securities, property or any other item of value<br><br>8. actual money, securities, property or other items of value in the custody or control of an **Insured**;<br><br>9. amounts otherwise reimbursable to an **Insured** by any trust, estate, plan or fund or any similar entity or the sponsor of any such trust, estate plan or fund or any similar entity; or<br><br>10. punitive and exemplary damages and the multiplied portion of multiplied awards. | |
| 50. **Management Control** means:<br><br>1. owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or<br><br>2. Having the right, pursuant to written contract or the by-laws, charter, operating agreement or | Wall Decl., **Ex. 14** (Columbia Policy, p. 367). |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF SUMMARY JUDGMENT // CASE NO. 8:22-CV-00842-PA-DFM

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| similar documents of an **Insured Entity**, to elect, appoint or designate a majority of: the Board of Directors of a  corporation; the management committee of a joint venture; or the management board of a limited liability  company. | |
| 51.     **Named Insured** means the company named in Item 1 of the Declarations, including such company as a debtor in  possession under United States bankruptcy law or an equivalent status under the law of any other country. | Wall Decl., **Ex. 14** (Columbia Policy, p. 367) |
| 52.     **Professional Services** means those services performed by or on behalf of the **Insured Entity** for a third party client of **Insured Entity** pursuant to a written contract with a third party client for consideration inuring to the benefit of such **Insured**.  **Professional Services** also means a **Lending Act**. | Wall Decl., **Ex. 14** (Columbia Policy p. 367, 383) |
| 53.     **Subsidiary** means:<br>1. any entity (other than a partnership) in which the **Named Insured** has **Management Control** directly or indirectly through one or more other **Subsidiaries**:<br>   a. on or before the effective date of this Policy[.] | Wall Decl., **Ex. 14** (Columbia Policy p. 368) |
| 54.     **Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or  breach of duty committed or attempted by the **Insureds**. | Wall Decl., **Ex. 14** (Columbia Policy, p. 368). |
| 55.     The Columbia policy contains a Prior Wrongful Acts of Subsidiaries exclusion. That exclusion provides that that the "Insurer shall not be liable to pay | Wall Decl., **Ex. 14** (Columbia Policy at 368). |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF SUMMARY JUDGMENT  //  CASE NO. 8:22-CV-00842-PA-DFM

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| that part of **Loss** under this Policy in connection with any **Claim** made against the **Insured Persons** or the **Insured Entity**": based or arising out of: a. any **Wrongful Act** by Insured Persons of any **Subsidiary** or by such **Subsidiary**, occurring before the date such entity became a **Subsidiary**, or b. any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**. | |
| 56.    The Columbia policy contains a Contractual Liability/Promises/ Guarantees exclusion. That exclusion provides that that the "Insurer shall not be liable to pay that part of **Loss** under this Policy in connection with any **Claim** made against the **Insured Persons** or the **Insured Entity**": based upon, directly or indirectly arising out of, or in any way involving: a. liability of others assumed by an **Insured** under any contract or agreement; (including but not limited to any policy, contract or agreement of insurance, reinsurance, suretyship, annuity or endowment); [or] b. any actual or alleged oral or written contract or agreement including but not limited to any representation, warranty, promise or guarantee of the past performance or future | Wall Decl., **Ex. 14** (Columbia Policy, Lenders Liability Coverage Endorsement, pp. 383-384). |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| value of any investment product; . . .<br><br>except that this exclusion shall not apply:<br><br>a. to the extent that liability would attach to an **Insured** in the absence for such contract or agreement.<br><br>b. to any **Claim** for a breach of agreement that is the basis of a **Lending Act Claim**. | |
| 57.   The Columbia policy contains a Lenders Liability Exclusion. That exclusion provides that the "Insurer shall not be liable to pay that part of **Loss** under this Policy in connection with any **Claim** made against the **Insured Persons** or the **Insured Entity**":<br><br>16.   **Loan/Lease/Extension of Credit**<br><br>based upon, directly or indirectly arising out of, or in any way involving…<br><br>* * *<br><br>any participation in any extension of credit not originated by an **Insured Entity**; however, this exclusion shall not apply to any loan originating on or after the effective date of this policy or any direct renewal thereof, where an Insured Entity participates as a lender, if, and only if the **Insured Entity**:<br><br>i.   independently underwrites all of such loan prior to participating; and | Wall Decl., **Ex. 14** (Columbia Policy, p. 384-385). |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| ii.  retains all proper documentation on the file.<br><br>The **Insurer**'s liability for **Loss** for such loans shall be limited to the **Insured Entity**'s portion of its participation in the loan, subject to the Limit of Liability stated in Item 6. of the Declarations. | |
| 58.    Section IV. **Limit of Liability/Retention** of the Columbia policy states:<br><br>The Insurer shall only be liable for the amount of **Loss** arising from each **Claim** which is in excess of the applicable Retention amount stated in Item 7 of the Declarations. The Retention amount shall apply to **Loss** arising from each **Claim** or from all **Claims** in the aggregate. The Retention shall be uninsured. The Insurer will have no obligation to pay all or any portion of any applicable retention. | Wall Decl., **Ex. 14** (Columbia Policy, p. 361). |
| 59.    Item 7 of the Declarations specifies a $2,000,000 retention applied to Each **Claim**. | Wall Decl., **Ex. 14** (Columbia Policy, p. 364). |
| 60.    Section V.2. **Defense of Claims** of the Columbia policy states:<br><br>The **Insureds** and not the Insurer have the duty to defend **Claims**. The Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim** that involves or appears reasonably likely to involve the Insurer. | Wall Decl., **Ex. 14** (Columbia Policy, pp. 371-372). |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 61.    Section V.3 **Allocation of Loss** of the Columbia policy states:<br><br>If a **Claim** made against the **Insureds** includes both covered and uncovered matters or if a **Claim** is made against **Insureds** who are extended coverage therefore and others who are not extended coverage  therefore, the **Insureds** agree that there must be an allocation between insured and uninsured loss. The **Insureds** and the Insurer shall exert their best efforts to agree upon a fair and proper allocation between  insured and uninsured loss. | Wall Decl., **Ex. 14** (Columbia Policy, p. 372). |
| 62.    Section V.4 Conditions for **Advancement of Defense Costs** states:<br><br>The Insurer, on behalf of the **Insureds**, shall advance **Defense Costs** no later than ninety (90) days after the receipt by the Insurer of itemized defense bills in excess of the applicable Retention. However, advancement of **Defense Costs** shall be subject to the following conditions:<br><br>a.  if the Insureds and the Insurer agree on an allocation of insured and uninsured Defense Costs, the Insurer shall advance the amount of insured Defense Costs;<br><br>b.  if the **Insureds** and the Insurer cannot, after exerting their best efforts, agree on an allocation of insured and uninsured **Defense Costs**, the Insurer then shall advance the percentage of **Defense Costs** which the Insurer states to be fair and proper until a different | Wall Decl., **Ex. 14** (Columbia Policy, p. 372). |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF SUMMARY JUDGMENT  //  CASE NO. 8:22-CV-00842-PA-DFM

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| allocation is agreed upon or determined pursuant to the provisions of this Policy and applicable law;<br><br>   c.  the **Insureds** shall provide a written undertaking satisfactory to the Insurer to repay the Insurer any **Defense Costs** finally established not to be insured; and<br><br>   d.  any allocation or advancement of **Defense Costs** shall not apply to or create any presumption with respect to the allocation of other **Loss**. | |
| 63.    Grandpoint Bank does not qualify as a **Subsidiary** or an **Insured** per the Columbia Policy. | Wall Decl. **Ex. 15,** (Pacific Premier's Response to Columbia Casualty's Requests for Admission, pp. 405-406, 409-410, 413-414). |
| 64.    Regents Bank does not qualify as a **Subsidiary** or an **Insured** per the Columbia Policy. | Wall Decl. **Ex. 15,** (Pacific Premier's Response to Columbia Casualty's Requests for Admission, at 407-408, 411-412, 415-16). |
| 65.    In 2020, Pacific Premier provided notice to Zurich American Insurance Company ("Zurich"), Columbia, and Travelers of the *Hamstreet*, *Anderson* and *Beattie* cases. | Wall Decl, **Ex. 16,** (Claim Note re Acknowledgment of Claim). |
| 66.    Columbia acknowledged the notice of claim on August 18, 2020. | Wall Decl, **Ex. 16,** (Claim Note re Acknowledgment of Claim). |
| 67.    Columbia reserved rights on March 5, 2021. | Wall Decl., **Ex. 17** (March 5, 2021 letter). |
| 68.    Columbia supplemented its coverage position in a position letter sent on January 26, 2022. In that letter, Columbia contended that, under the insuring agreement, the policy did not | Wall Decl. **Ex. 18,** (January 26, 2022 letter). |

STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF SUMMARY JUDGMENT  //  CASE NO. 8:22-CV-00842-PA-DFM

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| cover **Loss** for acts or omissions that occurred before the 2018 merger of Grandpoint Bank and Pacific Premier. That letter included a general reservation of rights and also reserved rights under the Loan/Lease/Extension of Credit Exclusion and the Prior Wrongful Acts of Subsidiaries Exclusion. | |
| 69.      Columbia's January 26, 2022 letter addressed the allocation provisions and stated:<br><br>We have considered the proportion of **Wrongful Acts** that could constitute covered matters in comparison to uncovered matters (everything predating PPB's 2018 acquisition of Grandpoint). Because the large majority of allegations concern acts by Regents and Grandpoint in the 10 years before the acquisition, rather than the one year after it, most of the loss should be allocated to PPB, rather than Columbia. While we believe it appropriate to further discount any allocation to account for the applicability of the Loan/Lease/Extension of Credit Exclusion, we will not do so at this time as an accommodation to the Insured and in an effort to resolve this issue promptly. Accordingly, we propose an allocation of 9% of loss arising from the Noticed Matters to Loss covered under the Policy. | Wall Decl. **Ex. 18**, (January 26, 2022 letter, p. 435). |
| 70.      Pacific Premier's counsel responded to Columbia's January 26, 2022 letter on March 24, 2024. In that letter, Pacific Premier contended that the applicable and controlling law for allocating defense and indemnity payments is the "Larger Settlement | Wall Decl., **Ex. 19** (Pacific Premier March 24, 2022 Letter, p. 439). |

19

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| Rule" and that under that rule Columbia should pay 100% of the defense expenses. | |
| 71.    Columbia responded to Pacific Premier's March 24, 2022 letter on June 1, 2022. In that letter, Columbia maintained that its proposed 9% allocation was fair and proper under the circumstances and offered to continue to discuss the matter in an effort to resolve disputes over the allocation of **Defense Costs**. | Wall Decl., **Ex. 20** (June 1, 2022 letter from CNA to Lopez, p. 446). |
| 72.    Pacific Premier filed this insurance coverage action on April 21, 2022, alleging claims for breach of contract, bad faith, and declaratory relief arising out of Zurich's failure to pay defense and indemnity costs incurred in connection with the Underlying Litigations.  On July 18, 2022, Pacific Premier filed an amended complaint in this action (the "FAC"), adding Columbia as a defendant, and similarly alleging claims for breach of contract, bad faith, and declaratory relief. | Wall Decl, **Ex. 21** (Pacific Premier First Amended Complaint, ("Pacific Premier FAC") |
| 73.    At the time Pacific Premier filed the first amended complaint and sued Columbia for breach of contract and bad faith, Pacific Premier had incurred $1,651,644 in defense expenses, which is lower than the applicable $2,000,000 retention. | Wall Decl, **Ex. 21** (Pacific Premier FAC, pp. 450:4-16, 460:10-13, 460:18-23, 461:8-25). |
| 74.    On June 23, 2023, Pacific Premier settled the Hamstreet litigation for a payment of $9,500,000.  That settlement requires, inter alia, entry of an order enjoining or dismissing with prejudice the *Anderson* litigation that has become final and non-appealable and an order enjoining or dismissing with prejudice | Wall Decl., **Ex. 22** (Hamstreet Settlement, Terms, 1(a), p. 469). |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| the *Beattie* litigation that has become final and non-appealable. | |
| 75.    Where claims concern covered and uncovered matters, Zurich has an obligation to pay 100% of defense expenses in excess of its $150,000 retention. | Wall Decl., **Ex. 13** (Zurich Policy Allocation provision, p. 357-58). |
| 76.    On August 16, 2023, Pacific Premier settled with co-defendant Zurich for a payment of $8,000,000. | Wall Decl., **Ex. 23** (Zurich settlement, Agreement, 1. Payment, 1.1, p.484). |
| 77.    The settlement allocated $0 of the settlement payment to defense costs. | Wall Decl., **Ex. 23** (Zurich settlement, Agreement, 1. Payment, 1.1, p. 484). |

DATED:  October 21, 2024              KENNEDYS CMK LLP


                                      By: */s/ Travis Wall*
                                      _____
                                      TRAVIS WALL
                                      TERI MAE RUTLEDGE
                                      Attorneys for Defendant
                                      COLUMBIA CASUALTY COMPANY